No. 25-20526

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————

IN RE: MELANIE FURNISS, BOBBIE POPE, ET AL.

Petitioners

———————————

ON PETITION FOR A WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS
NO. 4:24-CV-04611 (ELLISON, J.)

———————————

## RESPONSE FOR THE UNITED STATES

———————————

R. MATTHEW PRICE
United States Attorney

BRIAN P. CASEY
LEIGH FARMAKIDIS
DAVID WAGNER
Assistant United States Attorneys

Western District of Missouri

MATTHEW R. GALEOTTI
Acting Assistant Attorney General

JEREMY R. SANDERS
Assistant Chief

SARAH E. EDWARDS
ALLISON L. MCGUIRE
Trial Attorneys

Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20005
(202) 913-4782
sarah.edwards@usdoj.gov

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

*In re: Melanie Furniss, Bobbie Pope*, No. 25-20526

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel certifies that the following listed persons and entities, in addition to those listed by Petitioners, have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal:

Counsel for HMA:

> Andrea M. Johnson
> Dennis Duffy
> Christopher C. Pappas
> > Kane Russell Coleman Logan PC

Counsel for the Government:

> R. Matthew Price
> > United States Attorney for the Western District of Missouri
>
> Brian Casey
> Leigh Farmakidis
> David Wagner
> > Assistant United States Attorneys for the Western District of Missouri
>
> Sarah E. Edwards
> Allison L. McGuire
> > Trial Attorneys, Fraud Section, Criminal Division
> Jeremy R. Sanders
> > Assistant Chief, Fraud Section, Criminal Division

> */s/ Sarah E. Edwards*
> Sarah E. Edwards

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................. ii

INTRODUCTION ....................................................................................... 1

JURISDICTIONAL STATEMENT .............................................................. 2

ISSUE PRESENTED.................................................................................... 3

STATEMENT OF NECESSARY FACTS...................................................... 3

SUMMARY OF THE ARGUMENT .............................................................. 9

REASONS THE WRIT SHOULD NOT ISSUE ......................................... 10

    A.   Petitioners cannot establish a clear and indisputable right to the writ where the district court properly permitted the ex parte submission and did not rely on that submission in denying the receivership motion, which was wholly meritless........................................................................................... 11

    B.   The district court can address Petitioners' concerns in the first instance without intervention from this Court............................................ 24

    C.   A writ is not appropriate under these circumstances. ........................ 27

CONCLUSION............................................................................................ 30

CERTIFICATE OF SERVICE ..................................................................... 31

CERTIFICATE OF COMPLIANCE............................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Application of Eisenberg*,
654 F.2d 1107 (5th Cir. Unit B Sept. 1981) .................................... *passim*

*Cabatech, LLC v. Nextlight, LLC*,
Case No. 1:22-cv-59, 2023 WL 2643795 (S.D. Ohio Mar. 27, 2023) .... 20

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ................................................................ 11

*Crowe v. Smith*,
151 F.3d 217 (5th Cir. 1998) ................................................... 13

*Cunningham v. Brown*,
265 U.S. 1 (1924) .................................................................. 23

*Google LLC v. United States*,
443 F. Supp. 3d 447 (S.D.N.Y. 2020) .................................... 16

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) .............................................................. 21

*Guenther v. Comm'r of Internal Revenue*,
939 F.2d 758 (9th Cir. 1991)................................................. 14

*In re Abbott*,
117 F.4th 729 (5th Cir. 2024) ............................................... 24

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ................................................. 19

*In re Dean*,
527 F.3d 391 (5th Cir. 2008)........................................... 19, 27

*In re Ford Motor Co.*,
591 F.3d 406 (5th Cir. 2009)............................................ 18-19

*In re Fort Worth Chamber of Commerce*,
100 F.4th 528 (5th Cir. 2024) ............................................... 19

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) .................................................................... 11

*In re Media Matters for Am.*,
143 F.4th 631 (5th Cir. 2025) ................................................................... 10

*In re Parish*,
81 F.4th 403 (5th Cir. 2023) ................................................... 11, 12, 24

*In re Sealed Petitioner*,
106 F.4th 397 (5th Cir. 2024) .................................................. 11-12, 14

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)..................................................... 11, 24, 27

*In re Westcott*,
135 F.4th 243 (5th Cir. 2025) ......................................................... 11, 27

*Jackson v. City of Hearne, Texas, et al.*,
959 F.3d 194 (5th Cir. 2020) ......................................................... 13, 17

*Mainini et al., v. Health Matching Account Servs., Inc. et al.*,
Case No. 4:25-cv-05381 (S.D. Tex.) ........................................................ 8

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ..................................................... 16, 20, 21

*Pope et al. v. Health Matching Account Servs., Inc.*,
Case No. 4:24-cv-04611 (S.D. Tex.) ............................................. *passim*

*Pusey & Jones Co. v. Hanssen*,
261 U.S. 491 (1923) ............................................................................... 21

*Santibanez v. Wier McMahon & Co.*,
105 F.3d 234 (5th Cir. 1997) ......................................................... 16, 20

*Simer v. Rios*,
661 F.2d 655 (7th Cir. 1981) ................................................................. 13

*United States v. Abbott*,
92 F.4th 570 (5th Cir. 2024) ................................................................. 27

*United States v. Barnwell*,
477 F.3d 844 (6th Cir. 2007) ................................................................. 14

*United States v. Durham*,
  86 F.3d 70 (5th Cir. 1996) ....................................................... 23

*United States v. Health Matching Account Servs., Inc., et al.*,
  No. 25-cv-00814 (W.D. Mo.) ......................................... *passim*

*United States v. Payment Processing Center, LLC*,
  435 F. Supp. 2d 462 (E.D. Pa. 2006) ...................................... 4

*Warren v. Bergeron*,
  831 F.2d 101 (5th Cir. 1987) ................................................. 26

*Young v. Herring*,
  938 F.2d 543 (5th Cir. 1991) ................................................. 13

## Statutes

18 U.S.C. § 981(g)(5) ............................................................. 13
18 U.S.C. § 1345 ............................................................... 4, 5
28 U.S.C. § 144 .................................................................... 25
28 U.S.C. § 455 .................................................................... 25
28 U.S.C. § 1292(a)(2) .......................................................... 25
28 U.S.C. § 1332 ................................................................... 2
28 U.S.C. § 1651 ................................................................... 2

## Rules

Fed. R. Civ. P. 5(a)(1)(D) ...................................................... 18
Fed. R. Civ. P. 27 ................................................................ 14
Fed. R. Civ. P. 65(b)(1) ........................................................ 13

## Other

16 Wright & Miller, Fed. Prac. & Proc. Juris.,
  § 3925 Receivership Appeals (3d ed.) ............................... 25-26

## INTRODUCTION

This mandamus petition arises out of a putative class action brought in the Southern District of Texas against a company, Health Matching Account Services, Inc., that purported to offer a product called a "health matching account." Supposedly this account would enable members to double the funds they contributed to their accounts through "matching" funds from HMA. Petitioners are two HMA members who filed the putative class action.

On two points the Government and Petitioners agree. Both parties believe HMA was a Ponzi scheme. And both believe there is a pressing need to protect the members' interests in any remaining assets of HMA and to prevent further fraud.

The Government and Petitioners disagree on the best way to go about protecting HMA members. The Government has done so through a temporary restraining order it obtained in the Western District of Missouri under the Anti-Fraud Injunction statute. This TRO enjoins HMA from conducting further business and restrains its bank accounts.

Petitioners, however, believe the solution is a receivership. Following entry of the TRO, Petitioners filed in the putative class action an emergency motion requesting appointment of a receiver to take control of HMA's assets

and operations. The Government moved to intervene to oppose the motion. The district court denied the receivership motion.

The subject of the mandamus petition is an order of the district court permitting the Government to submit ex parte a supplemental memorandum and affidavit in support of its opposition to the receivership motion. These materials provided more details about the Government's ongoing criminal investigation into HMA.

Petitioners are not entitled to the extraordinary remedy of a writ of mandamus to address the district court's order permitting the ex parte submission. The district court committed no clear and indisputable error by permitting the ex parte submission, which did not violate Petitioners' due process rights. Nor is this a situation where Petitioners have no other available remedy. Many of their complaints could be addressed through a motion for reconsideration addressed to the district court. This scenario does not present the sort of an extreme circumstance in which a writ of mandamus is appropriate. For the reasons explained, no writ should issue.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction in this case under 28 U.S.C. § 1332. This Court has jurisdiction to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651.

**ISSUE PRESENTED**

Whether this Court should issue a writ of mandamus where the district court properly allowed the Government to present an ex parte submission but nonetheless found, without indicating reliance on that submission, that Petitioners failed to justify the appointment of a receiver.

**STATEMENT OF NECESSARY FACTS**

Health Matching Account Services, Inc. (HMA), purported to offer customers a "health matching account" that marketed itself as a health savings account-like product. *United States v. HMA et al.*, No. 25-cv-00814 (W.D. Mo.) (the "1345 Proceeding"), Dkt. No. 12 ¶ 1. HMA was not a provider of medical services; it offered a financial product that was supposed to assist its members in paying for medical expenses, including some not covered by insurance such as dentistry and cosmetic procedures. HMA promised that its members could double the funds they contributed to their accounts in just under three years through "matching" from HMA, thereby increasing funds available to pay for eligible medical expenses. In reality, the Government believes HMA was a Ponzi scheme.

HMA members sent in monthly contributions that, over time, were supposed to be matched by HMA, enabling the member to earn "up to $2 in medical matching or more for every $1 above and beyond" what the member

contributed. *Id*. ¶ 11. HMA members could use their HMA balances to pay for eligible medical expenses. *Id*. ¶ 12. If an HMA member made a claim against their account balance, they could rebuild their balance through their monthly contributions. *Id*. But if a member ceased contributing to her account, she would no longer be able to use her health matching account and would forfeit the account balance to HMA. *Id*. ¶ 15. HMA members complained that over time HMA changed how the product worked in ways that were detrimental to members, that HMA delayed payment to the members' medical providers or reimbursement to the members themselves, and that HMA debited funds from their HMA balances but paid their medical providers less than the debited amount. *See id*. ¶¶ 21-29.

On October 17, 2025, the Government filed a complaint in the Western District of Missouri under 18 U.S.C. § 1345, the Anti-Fraud Injunction statute, seeking to halt HMA's ongoing wire fraud scheme. 1345 Proceeding Dkt. Nos. 1, 12. Section 1345 authorizes "injunctive relief to enjoin specified ongoing or contemplated crimes" and "empowers courts to enter restraining orders" and to take other action as "is warranted to prevent a continuing and substantial injury to the United States or to any person or class of person for whose protection the action is brought." *United States v. Payment Processing Center, LLC*, 435 F. Supp. 2d 462, 464 (E.D. Pa. 2006). Consequently, "civil

suits under § 1345 are often used to preserve the status quo during a lengthy parallel criminal probe." *Id*. Section 1345 authorizes the Government to seek appointment of a receiver, but the Government intentionally did not do so here. *See* 18 U.S.C. § 1345(a)(2)(B)(ii); 1345 Proceeding Dkt. No. 11.

The District Court for the Western District of Missouri found that the United States had made a sufficient showing that "absent emergency injunctive relief, Defendants will both continue to solicit new members who will begin to make new contributions to the fraudulent healthcare savings plan-like programs and will continue to collect contributions by existing members and may then dissipate, alienate, and conceal the proceeds of the fraudulent scheme" and entered a temporary restraining order (the "TRO") on October 22, 2025. 1345 Proceeding Dkt. No. 11 at 1-2. That court further found that emergency injunctive relief was necessary "to protect the public interest as expressly authorized by the Anti-Fraud Injunction Statute" and enjoined HMA from soliciting new members and processing payments from existing HMA members. *Id*. The court also restrained multiple bank accounts, enjoined HMA from using its assets, enjoined HMA from destroying or otherwise discarding records (including electronically stored information), and ordered two internet-service providers to take steps to prevent the public from accessing HMA's websites. *Id*.

On October 23, 2025, the FBI executed a search warrant at HMA's corporate office and served HMA with the TRO. *See* 1345 Proceeding, Dkt. No. 8.

On October 28, 2025, Petitioners, two HMA members who had previously filed a breach of contract action on behalf of a putative class in the Southern District of Texas (the "Contract Proceeding"), filed an emergency motion requesting the appointment of a receiver. *Pope et al. v. Health Matching Account Servs., Inc.*, Case No. 4:24-cv-04611 (S.D. Tex.), Dkt. Nos. 1 and 61. The receivership motion explained that the proposed receiver would hire a team of claims processors, IT specialists, forensic accountants, medical consultants, and legal counsel to take control of HMA's assets and operations, stay competing litigation, and liaise with the Government. Contract Proceeding, Dkt. No. 61-1 at 19–25. In subsequent filings, Petitioners expressed their expectation that the proposed receiver will "marshal, liquidate, and distribute" the assets frozen by the TRO in the 1345 Proceeding. Contract Proceeding Dkt. No. 63 at 3, No. 70.

The next day, October 29, 2025, the district court held a hearing regarding the receivership motion. *See* Contract Proceeding Dkt. No. 62. Prior to the hearing, that court granted the Government attorneys who filed the 1345

Proceeding leave to appear pro hac vice in the Contract Proceeding. *See* Contract Proceeding Dkt. Nos. 67, 68, 69.

Following the hearing, the Government filed a motion to intervene in the Contract Proceeding that also opposed the receivership motion and sought to stay depositions in the Contract Proceeding for six months. *See* Contract Proceeding Dkt. No. 72. The Government likewise moved for leave to file ex parte and under seal a supplemental memorandum and affidavit in further support of its opposition to the receivership motion, which the district court granted. *See* Contract Proceeding Dkt. Nos. 73, 79. HMA, the defendant in the Contract Proceeding, also opposed the receivership motion. Contract Proceeding Dkt. No. 71.

On November 7, 2025, the district court denied the receivership motion. *See* Contract Proceeding Dkt. No. 81. The district court's order explained its reasons for the denial:

> At the October 29 hearing, Plaintiffs did not satisfactorily explain why appointment of a receiver is preferable to the initiation of a bankruptcy proceeding. Nor did Plaintiffs explain how a receiver would efficiently interact with the parties in United States v. HMA et al., Case No. 4:25-00814-CV-W-RK (W.D. MO.), particularly in light of the TRO currently in effect in the Western District of Missouri case. Therefore, the Court finds and holds that the Motion is DENIED.

*Id*. Shortly thereafter, Petitioners submitted the instant petition for a writ of mandamus ("Pet.").

On November 11, 2025, Petitioners' counsel also filed in the Southern District of Texas a second putative class action lawsuit, in the name of a plaintiff originally included in the Contract Proceeding, alleging breach of contract and fraud (the "Second Contract Proceeding"). *Mainini et al., v. Health Matching Account Servs., Inc. et al*., Case No. 4:25-cv-05381 (S.D. Tex.). The Second Contract Proceeding named HMA, Regina Gorog, Elliott Gorog, and multiple related entities as defendants, appears to be based on the same facts at issue in the Contract Proceeding and 1345 Proceeding, and relies on facts alleged by the United States in the 1345 Proceeding. *Compare* 1345 Proceeding Dkt. No. 12, *with* Second Contract Proceeding Dkt. No. 1. HMA filed a Notice of Related Case in the Contract Proceeding, informing the district court of the Second Contract Proceeding and stating that the second class-action lawsuit was "originally proposed as an amendment in this lawsuit" and that it "appears that Plaintiff may be judge shopping." *See* Contract Proceeding Dkt. No. 82.

The Government's motion to intervene and for a limited stay of discovery is still pending in the Contract Proceeding. The district court held a hearing on the motion on December 15, 2025. The court stayed discovery against HMA for six months but did not stay discovery against third partes. The court did not rule on the Government's motion to intervene.

The Government's criminal investigation into HMA is ongoing.

## <u>SUMMARY OF THE ARGUMENT</u>

A writ of mandamus is an extraordinary remedy that is available in only the most extraordinary circumstances. To be entitled to the writ, Petitioners must show that district court committed a clear and indisputable error, that there is no other available remedy, and that the error is so extreme that this Court should exercise its discretion to address it through a writ. Petitioners fail to make any of those showings, and this Court should deny their request.

The district court did not err in its consideration of Petitioners' motion for a receiver. The court properly granted the Government leave to present an ex parte submission, which provided the court with confidential information regarding an ongoing criminal investigation. But the court's order denying Petitioners' receivership motion demonstrates the court did not need the Government's submission because the Petitioners had wholly failed to justify the appointment of a receiver.

Nor can Petitioners show that a writ provides them otherwise unavailable relief. Petitioners claim they are entitled to a writ because of the errors in how the district court ruled upon their motion, but the court's order said that it denied the motion due to Petitioners' failure justify a receiver at the hearing on their motion. To the extent Petitioners doubt that was the

court's reason, their remedy would be to take the issue up with the district court in the first instance. The same is true for Petitioners' unsupported request for recusal of the district court. As Petitioners recognize, they cannot file an interlocutory appeal to challenge the denial of a motion for a receivership, and this Court should not allow them to use unwarranted complaints about the district court's process to circumvent Congress's long-recognized prohibition of an appeal.

This is simply not a circumstance in which this Court should issue a writ of mandamus. The Government has taken steps to restrain HMA's assets and prevent it from committing further fraud. The Government has already protected HMA's assets for its members, and a receiver would only dissipate those funds, not preserve them. Petitioners are not entitled to discover the confidential information contained in the Government's ex parte submission. The Government agrees that there was fraud and is working toward justice for victims of the fraud. The requested writ would only undermine those efforts and should be denied.

## REASONS THE WRIT SHOULD NOT ISSUE

"A writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary cases." *In re Media Matters for Am.*, 143 F.4th 631, 636 (5th Cir. 2025) (quotations omitted). This Court issues a writ only if three

conditions are met: (1) the petitioners demonstrate a "clear and indisputable right to the writ," (2) petitioners have "no other adequate means to attain" the requested relief, and (3) this Court is "satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). Beginning with Petitioners' failure to demonstrate any right to issuance of the writ, each factor weighs in favor denying this petition.

A.     *Petitioners cannot establish a clear and indisputable right to the writ where the district court properly permitted the ex parte submission and did not rely on that submission in denying the receivership motion, which was wholly meritless.*

The "first mandamus-test prong is about the legal merits of a petitioner's claim." *In re Parish*, 81 F.4th 403, 409 (5th Cir. 2023). For petitioners to demonstrate a clear and indisputable right to the writ, "it is not enough to show that the district court erred or abused its discretion." *In re Westcott*, 135 F.4th 243, 246 (5th Cir. 2025). Satisfying this prong "require[s] more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (quotation omitted). Rather, petitioners "must show not only that the district court erred[,] but that it *clearly and indisputably erred*." *Id*. (quotation omitted). "Indeed, this court may deny the writ as a matter of prudence even when the district court erred." *In re*

*Sealed Petitioner*, 106 F.4th 397, 402 (5th Cir. 2024) (cleaned up). "[B]ecause the standard is a *clear* abuse of discretion, the merits of the claim must also be clear: the writ will not issue to correct a duty that is to any degree debatable." *In re Parish*, 81 F.4th at 409 (quotation omitted).

On the merits, Petitioners establish no right to issuance of the writ, let alone any clear and indisputable one. The district court did not err in allowing the Government to provide an ex parte submission in connection with its opposition to receivership motion. There is no absolute prohibition on a court considering ex parte information, and such consideration is appropriate to protect an ongoing criminal investigation. Moreover, Petitioners cannot have been prejudiced by the Government's ex parte submission when it was Petitioners' own failure to persuade the court that their requested relief was appropriate that formed the basis for the court's denial of the motion for a receiver. The motion lacked any merit, and the court was well within its discretion in denying it based on Petitioners' failure to justify their request. Petitioners cite no error, let alone a clear and indisputable error, and this Court can deny the petition on that ground alone.

1. Petitioners' due process argument rests on their assertion that "[t]he prohibition on ex parte proceedings in civil cases is absolute." Pet. at 22. This proposition is wrong. There is no absolute prohibition on ex parte

communications in civil cases. Ex parte submissions are permitted when supported by a compelling interest, and a due process violation occurs only to the extent that an opposing party is deprived of a fair and just hearing. Here, compelling Government interests supported the ex parte submission, and Petitioners were not deprived of a fair and just hearing.

"Not all ex parte proceedings violate due process or even raise a serious constitutional issue." *Simer v. Rios,* 661 F.2d 655, 679 (7th Cir. 1981). As this Court recently reiterated, "'*[e]x parte* communication amounts to a due process violation only to the extent that a fair and just hearing would be thwarted and to that extent only.'" *Jackson v. City of Hearne, Texas, et al.*, 959 F.3d 194, 203 (5th Cir. 2020) (cleaned up and quoting *Young v. Herring*, 938 F.2d 543, 557 (5th Cir. 1991)). This Court previously conducted "extensive research" and "could locate no Fifth Circuit case that found ex parte 'contacts' to constitute a reversible violation of due process." *Crowe v. Smith*, 151 F.3d 217, 234 (5th Cir. 1998). Instead, this Court found "a vast number of cases holding the contrary." *Id.*

Ex parte communications are permitted in a variety of contexts, including temporary restraining orders, *see* Fed. R. Civ. P. 65(b)(1), motions seeking stays of civil forfeiture proceedings, *see* 18 U.S.C. § 981(g)(5), and privilege determinations, *see Application of Eisenberg*, 654 F.2d 1107, 1112

(5th Cir. Unit B Sept. 1981). Just last year, this Court considered evidence submitted by the government ex parte when denying a mandamus petition. *See In re Sealed Petitioner*, 106 F.4th 397, 405 (5th Cir. 2024).

Ex parte communications are permitted when supported by a compelling interest. This Court has explained that while "[o]ur legal system generally does not tolerate ex parte determinations on the merits of a civil case," "[a]n exception to this principle is made when countervailing government interests dictate that information sought to be discovered should remain secret." *Eisenberg*, 654 F.2d at 1112. Other courts have similarly recognized that ex parte communications are permitted if supported by a compelling interest. *See United States v. Barnwell*, 477 F.3d 844, 850 (6th Cir. 2007) ("An *ex parte* communication between the prosecution and the trial judge can only be justified and allowed by compelling state interest." (quotation omitted)); *Guenther v. Comm'r of Internal Revenue*, 939 F.2d 758, 650 (9th Cir. 1991) (per curiam) (noting that ex parte communications can be tolerated "in light of a compelling justification" (quotation omitted)).

For example, in *Eisenberg* the petitioner sought leave to depose a Scotland Yard agent pursuant to Federal Rule of Civil Procedure 27. *See Eisenberg*, 654 F.2d at 1109-10. The Government opposed the petition, identified the petitioner as the target of a pending grand jury investigation,

and explained that foreign relations would be harmed if the deposition occurred. *Id.* at 1110. During the litigation, the district court reviewed in camera some materials provided by the Government, and it ultimately denied the petition. *Id.* at 1111.

This Court held that the in camera review did not violate the petitioner's due process rights. *Id.* at 1112-13. It noted that "[c]learly the merits of discovery requests can be addressed on the basis of an in camera, ex parte examination of the information likely to be discovered without offending the due process clause." *Id.* at 1112. It found the ruling on the Rule 27 petition to be, "in effect, a ruling on discoverability." *Id.* Furthermore, noting that "[d]ue process is a flexible concept," this Court reasoned that "[t]he lesser the interest of which a person stands to be deprived, the fewer the procedural safeguards afforded to him by the Constitution." *Id.* The petitioner had "no absolute entitlement to early discovery under Rule 27" and would be free to seek discovery after filing a lawsuit. *Id.* Finally, this Court determined that in balancing "the potential litigant's limited right to obtain evidence preliminarily with the significant governmental interests in preserving grand jury secrecy and foreign policy confidences" the district court had "properly considered . . . this circuit's policy that criminal prosecutions take priority over civil actions." *Id.* at 1113.

Applied here, *Eisenberg's* balancing test supports the Government's right to file an ex parte submission here. On the one hand, the appointment of a receiver is "an extraordinary remedy that should be employed with the utmost caution," *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (quotation omitted), and "[t]he appointment is in the sound discretion of the court." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997). Petitioners had no entitlement to a receivership, and for the reasons explained below, they did not come close to satisfying the standard for one. Under these circumstances, their interests in a receivership and in reviewing the ex parte information are minimal at best.

On the other hand, the Government has a strong interest in preserving the confidentiality of information relating to its ongoing investigation. "The Government has a compelling interest in maintaining the secrecy of an ongoing criminal investigation." *Google LLC v. United States*, 443 F. Supp. 3d 447, 452 (S.D.N.Y. 2020) (concluding that a non-disclosure order accompanying a search warrant survived strict scrutiny review). It was important for the Government to provide the district court with evidence regarding its criminal investigation so the court would have a fuller picture of its investigation and a better understanding of the potential impacts of a receivership. That information furthered the policy that "criminal

prosecutions take priority over civil actions," *Eisenberg*, 654 F.2d at 1113, by helping the court ensure its actions in the civil case did not prejudice the criminal investigation. The Government has a powerful interest in preserving the confidentiality of the information to protect the identities and privacy both of individuals who have provided information in the ongoing investigation as well as of potential defendants, and also to prevent potential subjects or witnesses from destroying evidence or tampering with witnesses.

On balance, the Government's compelling interests in confidentiality far outweigh Petitioners' interests in reviewing the information for purposes of pursuing a receivership to which they are not entitled. The due process clause will abide the Government's ex parte submission.

2. Even if the district court somehow erred by considering the submission, that consideration did not thwart a fair and just hearing. *See Jackson*, 959 F.3d at 203 ("*Ex parte* communication amounts to a due process violation only to the extent that a fair and just hearing would be thwarted and to that extent only." (cleaned up)). The court's order does not indicate that it based the denial of Petitioners' receivership motion on anything in the ex parte submission. Contract Proceeding Dkt. 81. Instead, the court denied the motion because Petitioners failed to satisfactorily explain at the October 29 hearing (1) "why appointment of a receiver is preferable to the initiation of a

bankruptcy proceeding," or (2) "how a receiver would efficiently interact with the parties in the [1345 Proceeding], particularly in light of the TRO currently in effect." Contract Proceeding Dkt. 81.

Neither of these two reasons has anything to do with the Government's ex parte submission. Rather, the order reflects that Petitioners failed to justify a receivership during the October 29 hearing, which occurred before the Government made its ex parte submission. The submission could not have impacted the court's ruling when Petitioners had already failed before the submission was made. Because there is no indication the ex parte submission affected the district court's ruling, the submission cannot have thwarted a fair and just hearing.

3. The authorities Petitioners rely upon do not point to a different conclusion, much less establish that the district "clearly and indisputably erred." The Federal Rules of Civil Procedure contemplate ex parte filings. Rule 5(a)(1)(D) expressly provides that motions that may be heard ex parte need not be served on other parties. Similarly, Canon 3A(4)(a) of the Code of Conduct for United States Judges permits judges to consider ex parte communications "as authorized by law."

The cases Petitioners describe as "analogous and controlling," Pet. at 32-35, are not analogous at all. In *In re Ford Motor Company*, a multidistrict

litigation court erred by relying on ex parte orders from Mexican courts without expert testimony analyzing the orders, where similarly situated plaintiffs had previously acted fraudulently in obtaining similar orders. 591 F.3d 406, 413-14 (5th Cir. 2009). In *In re Dean*, the district court violated the Crime Victims' Rights Act by granting the government's ex parte request to enter into a plea agreement without notifying victims, yet this Court ultimately declined to issue a writ of mandamus because the victims were allowed to participate in the plea hearing. 527 F.3d 391, 394-95 (5th Cir. 2008). *In re Clarke* and *In re Forth Worth Chamber of Commerce* did not involve ex parte issues at all. Instead, both cases involved motions to transfer, and this Court granted writs of mandamus because in the former the district court committed "patent error" by transferring a case, and in the latter the district court lacked jurisdiction to transfer. *See In re Clarke*, 94 F.4th 502, 516 (5th Cir. 2024); *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 537 (5th Cir. 2024). None of these cases supports Petitioners' position that a writ of mandamus is appropriate under the very different circumstances involved here.

4. As the record below established, the district court properly denied Petitioners' extraordinary request for the appointment of a receiver in an uncertified class action because Petitioners failed to satisfy their burden of establishing the necessity of such relief. Petitioners' request not only directly

conflicts with and seeks to undo a TRO issued by the Western District of Missouri based on a legally sufficient showing of ongoing criminal fraud but also fails each prong of the applicable test.

Under Federal Rule of Civil Procedure 66, "the appointment of a receiver can be sought by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer." *Santibanez,* 105 F.3d at 241 (quotation omitted). Receivership, however, is "an extraordinary remedy that should be employed with the utmost caution and is justified only where [1] there is a clear necessity to protect a party's interest in property, [2] legal and less drastic equitable remedies are inadequate, and [3] the benefits of receivership outweigh the burdens on the affected parties." *Netsphere*, 703 F.3d at 305 (quotation omitted); *see also Santibanez*, 105 F.3d at 241-242. "Importantly, to justify the appointment of a receiver such claims would *already have been reduced to judgment.*" *Netsphere*, 703 F.3d at 306 (emphasis added).

As an initial matter, Petitioners presently lack a judgment against HMA, which alone is fatal. "Without more, mere allegations of an unpaid debt are insufficient to show a legitimate interest in . . . property." *Cabatech, LLC v. Nextlight, LLC*, Case No. 1:22-cv-59, 2023 WL 2643795, at *5 (S.D. Ohio

Mar. 27, 2023) (denying emergency motion to appoint receiver and citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 320 (1999)). Instead, some "cognizable interest" in property is required. *Id.*; *see also Netsphere*, 703 F.3d at 308 ("Establishing a receivership to secure a pool of assets to pay Baron's former attorneys, who were unsecured contract creditors, was beyond the court's authority.") (citing *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923)).

Petitioners likewise failed to make an adequate showing of necessity, that a less drastic remedy is not available, and that the benefits of a receiver would outweigh the burden. The Government could have requested the appointment of a receiver in the 1345 Proceeding, but chose not to do so for the same reasons that a receiver is not appropriate in the civil action, namely, that (1) a receiver would not provide any benefit not already accomplished through the TRO, and paying a receiver only reduces the limited funds that will ultimately be available to victims; and (2) appointing a receiver to conduct any portion of HMA's operations on an ongoing basis would necessarily perpetuate a business that Petitioners themselves allege to be, and another district court has already found cause to believe is, a Ponzi scheme. The Government has obtained an order restraining HMA's assets and continued operations that has halted any ongoing fraud and stopped the

continued harm to victims of making contributions to HMA. The Government has created a website to provide HMA members with information about the 1345 Proceeding that contains a link to a form where HMA members can report their experiences with HMA, including losses, to the FBI.[1]  In sum, a less drastic remedy than receivership is already in place, and Petitioners have not and cannot show the TRO is inadequate to provide the available legal relief to victims when Petitioners do not have a judgment against HMA or its owners and where resuming HMA's business operations in any form would perpetuate the fraud and victim harm.

Finally, the burdens a receiver would impose are substantial and would be borne by victims. Even if a receiver could operate HMA without perpetuating the fraud (which is not possible), a receiver (and the additional professionals he retains) will drain the assets that could be available to victims at the resolution of the criminal investigation and any other actions against HMA. Similarly, continuing to collect member contributions would constitute a court-sanctioned continuation of the fraud, and paying any claims would require a receiver to arbitrarily prioritize certain victims (those currently making claims) over others (who have already paid into the scheme but are

---

[1]  *See* https://www.justice.gov/criminal/case/united-states-v-health-matching-account-services-inc-hma-pet-health-matching-account.

not currently making a claim). *See, e.g.*, *Cunningham v. Brown*, 265 U.S. 1, 13 (1924) (holding that Ponzi scheme victims are equal before the law and "[t]hose who were successful in the race of diligence violated not only its spirit, but its letter, and secured an unlawful preference"); *see also United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996) (affirming pro rata distribution to victims where district court found that "all the fraud victims were in equal positions and should be treated as such"). As such, the burdens created by the appointment of a receiver, including but not limited to perpetuating a fraudulent business, would outweigh any potential benefits.

The district court recognized all of this in denying the motion for a receivership. Contract Proceeding Dkt. 81. The court specifically noted that Petitioners failed to explain how a receiver would interact with the present civil injunction out of the Western District of Missouri, which indicates the court understood the fraudulent nature of the business. The court also found that Petitioners failed to explain why a bankruptcy would not equally serve their interests in recovering funds, indicating the court's understanding that HMA has no value as a going concern. Albeit short, the court's order properly rejected the motion for a receivership on its merits.

* * * * *

Petitioners fail to establish any right to the writ, much less a clear and indisputable right, meaning this Court can deny relief under the first prong and "pretermit discussion of prong two and three." *In re Abbott*, 117 F.4th 729, 741 (5th Cir. 2024).

B.    *The district court can address Petitioners' concerns in the first instance without intervention from this Court.*

If this Court reaches it, prong "two of the mandamus analysis—that there must be no other adequate means to obtain the relief desired—is a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *In re Parish*, 81 F.4th 403, 416 (5th Cir. 2023) (quotations omitted). "If the issue presented in the mandamus petition is effectively reviewable after trial, then the writ should not issue." *Id*. (quotation omitted). In this way, the second prong is "similar to an irreparable-injury analysis." *Id*. (citing *Volkswagen.*, 545 F.3d at 311).

Here, Petitioners complaints can and should be brought to the district court in the first instance. Much of Petitioners' attempt to establish a violation of their due process rights stems from what they claim to be deficiencies in the district court's decision making. For example, Petitioners assert "the district court's timeline demonstrates that the ex parte submission was likely decisive." Pet. at 7. The court found, however, that "[a]t the October 29 hearing" Petitioners did not adequately explain the need for a receiver.

Contract Proceeding Dkt. No. 81. To the extent Petitioners complain the court did not adequately consider their post-hearing submissions, Pet. at 18-19, or relied up on the Government's ex parte submission without attribution, Pet. at 7, 19, the proper vehicle would be a motion to reconsider or clarify to the district court, not the extraordinary relief sought in this petition.

The district court's ability to address Petitioners' concerns in the first instance is particularly true for Petitioners' final request for relief—an order directing "the district court to recuse itself from further proceedings and reassign the case to a different judge." Pet. at 43. Any request for recusal should be made in the first instance to the district court, *see* 28 U.S.C. § 144 (allowing for motions for judicial disqualification based on bias), which is in the best position to determine whether reassignment would be required, *see* 28 U.S.C. § 455 (detailing grounds for judicial disqualification). Petitioners wholly fail to justify their request for recusal at this time.

As petitioners recognize, 28 U.S.C. § 1292(a)(2) allows for an interlocutory appeal from the appointment of a receiver, but not from the denial of a motion to appoint a receiver. Pet. at 28; *see also* Vol. 16 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3925 Receivership Appeals (3d ed.) (explaining that "just as there is no general authority to appeal from an order refusing to appoint a receiver, there is no

authority to appeal from an order vacating an initial appointment"). This is because "[a] district court's decision *not* to appoint a receiver may also have dire consequences, but Congress found the threat to property rights from failure to appoint a receiver not so consistently and profoundly serious as to override the general policy against permitting review of interlocutory orders." *Warren v. Bergeron*, 831 F.2d 101, 103 (5th Cir. 1987). Since "[m]andamus may not serve as a substitute for appeal," this Court has denied mandamus seeking to reinstate a receiver, which is no different than the denial of the appointment of a receiver here. *Id*. Given the writ is not available to address the district court's order denying a receiver, it should likewise not be used to review the district court's process in arriving at that decision.

To the extent Petitioners argument rests on time sensitivity, Pet. at 27, the TRO in the Western District of Missouri ensures that HMA cannot dissipate its finances and maintains the status quo. HMA is currently enjoined from soliciting new members and cannot make withdrawals, both due to the injunction on paying claims and because the Government has restrained the relevant accounts. 1345 Proceeding Dkt. No. 11 at 1-2. Preventing HMA from further fraud is of paramount importance, and the Government is doing exactly that.

*C.*     *A writ is not appropriate under these circumstances.*

In the end, "[t]he decision whether to grant mandamus is largely prudential." *In re Dean*, 527 F.3d at 396 (denying mandamus as "the better course" despite a clear violation of victims' rights). Prudential considerations cut against issuing a writ here.

This petition, submitted by two HMA members who do not yet represent a class of HMA members, does not present an issue of "importance beyond the immediate case," *Volkswagen*, 545 F.3d at 319, nor does it implicate an issue of "public importance and exceptional character," *In re Westcott*, 135 F.4th 243, 247 (5th Cir. 2025) (quotation omitted), which are the sorts of considerations that have prompted this Court to exercise its discretion to provide mandamus relief. *See also United States v. Abbott*, 92 F.4th 570, 573-74 (5th Cir. 2024) (Willett, J., concurring in denial of motion for stay) (noting cases typically feature "some *plus* factor that is not present here, such as the need to maintain proper deference to the legislature or executive or the risk that, without mandamus relief, the district court's actions will cause irremediable harm."). Rather, a single set of litigants seek reconsideration of an unappealable adverse ruling through a concocted due process rationale. Nothing in this petition warrants a writ.

Petitioners' litigation tactics further counsel against issuing a writ. In parallel to their pursuit of the writ, Petitioners are trying other ways of end running the district court's denial of their receivership motion. Four days after their motion was denied, Petitioners' counsel filed, on behalf of a plaintiff originally included in the Contract Proceeding, a second putative class action lawsuit against the same defendant, HMA, as well as additional defendants, and raising substantially the same allegations—bolstered by allegations from the Government's complaint in the 1345 Proceeding. Second Contract Proceeding Dkt. No. 1. This lawsuit appears to be an attempt at forum shopping and a ploy to pursue from another judge the relief Petitioners have properly been denied in this case.

What matters at this juncture of the case is that HMA has been prevented from further victimizing any of its members and that every effort is being made to preserve funds for those members through the processes available to the Government. The TRO in the Western District of Missouri accomplishes these purposes. Petitioners should not be permitted to hamper those efforts through imposition of a receivership, which was properly denied by the district court. Two HMA members, who do not yet represent a class, cannot cause control over a company against whom they have no judgment to be transferred to a receiver, regardless of whether the Government has an

ongoing criminal investigation into that company. The existence of a criminal investigation does not somehow imbue Petitioners with greater power over HMA or entitlement to HMA's assets than they would have in the normal course. As a matter of prudence, the writ should not issue.[2]

---

[2] To the extent any writ is appropriate, it should not provide Petitioners the specific relief they are seeking. Pet. at 43. In particular, this Court should not direct the district court to disclose to Petitioners the contents of the Government's ex parte submission. The district court granted the Government leave to file ex parte, and the Government should not now be prejudiced by forced disclosure of sealed materials discussing an ongoing criminal investigation.

## CONCLUSION

For these reasons, the Court should deny Petitioners' mandamus petition.

Respectfully submitted,

R. MATTHEW PRICE
United States Attorney

MATTHEW R. GALEOTTI
Acting Assistant Attorney General

BRIAN P. CASEY
LEIGH FARMAKIDIS
DAVID WAGNER
Assistant United States Attorneys

JEREMY R. SANDERS
Assistant Chief

SARAH E. EDWARDS
ALLISON L. MCGUIRE
Trial Attorneys

Western District of Missouri

*/s/ Sarah E. Edwards*
SARAH E. EDWARDS
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20005
(202) 913-4782
sarah.edwards@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that, on December 16, 2025, I served an electronic copy of the Response for the United States on all litigants via the Court's ECF system. I certify that all participants in the case are registered ECF users and that service will be accomplished through the ECF system.

*/s/ Sarah E. Edwards*
Sarah E. Edwards

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 21(d)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Local Rule 21, this document contains 6,378 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 software in 14-point, Times New Roman font.

*/s/ Sarah E. Edwards*
Sarah E. Edwards